UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ALBERTO E. DELEON, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:12-CV-68 |
| | ) | *Mattice/Carter* |
| v. | ) | |
| | ) | |
| HAMILTON COUNTY SHERIFF'S | ) | |
| DEPT.; [1] SHERIFF JIM HAMMOND; | ) | |
| CHIEF PARSONS; CAPT. SWOPES; | ) | |
| LT. COPPINGER; CPL. BONAR; | ) | |
| OFF. WILHOIT; HAMILTON COUNTY | ) | |
| JAIL PHYSICIANS ASSISTANTS | ) | |
| ROBERT STOAKES & BILL WILSON; | ) | |
| ERLANGER HEALTH SYSTEMS; | ) | |
| DR. BARKER, ERLANGER HOSPITAL; | ) | |
| DR. PAPILLION, ERLANGER | ) | |
| HOSPITAL; | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Alberto E. Deleon ("Plaintiff") filed this *pro se* complaint for damages pursuant to

42 U.S.C. § 1983 (Court File No. 2). In addition, Plaintiff has filed a motion to proceed

*in forma pauperis* and various other motions (Court Doc. 1, 3, 5, 7, 7-1, 8, 9, 13, 15, 16,

17, 18, 19, & 22).

Plaintiff, an inmate incarcerated at the Hamilton County Jail complains about jail

conditions, criminal court extradition proceedings, and medical care he received at

Erlanger hospital prior to being booked in the Hamilton County Jail. In addition to

---

[1]     Although the Clerk named Hamilton County as a defendant, Plaintiff did not specifically identify
Hamilton County as a Defendant in his complaint. Rather, Plaintiff identified Hamilton County Sheriff's
Department as a defendant; a defendant which the Clerk omitted. Similarly, the Clerk indicated Plaintiff
was suing all parties in both their individual and official capacities, but the Court is unable to find
anywhere in the complaint where Plaintiff specifies the capacity in which he wished to sue each
defendant.

requesting $2.5 million dollars in damages, Plaintiff requests he be given his "day in court[.]" (Court File No. 2).

For the reasons set forth below, after reviewing the complaint and accepting all of its allegations as true and liberally construing them in the light most favorable to Plaintiff, the Court concludes Defendants Wilhoit, Erlanger Health Systems, Dr. Barker, and Dr. Papillion will be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 21 of the Federal Rules of Civil Procedure, Plaintiff's complaint against the remaining defendants will be **DISMISSED** *sua sponte* in its entirety for failure to state a claim upon which relief may be granted (Court Doc. 2), his motion to proceed *in forma pauperis* will be **GRANTED IN PART and DENIED IN PART** (Court Doc. 1), and his other motions will be **DENIED** (Court Doc. 3, 5, 7, 7-1, 8, 9, 13, 15, 16, 17, 18, 19, & 22).

## I.    APPLICATION TO PROCEED *IN FORMA PAUPERIS*

It appears from the application to proceed *in forma pauperis* submitted by Plaintiff that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00. Plaintiff is not relieved of the ultimate responsibility of paying the $350.00 filing fee. Since Plaintiff is an inmate in custody at the Hamilton County Jail in Chattanooga, Tennessee, his *in forma pauperis* application will be **GRANTED IN PART and DENIED IN PART** (Court Doc. 1)**.** Specifically, Plaintiff's *in forma pauperis* application will be **GRANTED** to the extent that he does not have to pay the total fee at this time but **DENIED** to the extent he will not be excused from paying the filing fee (Court Doc. 2). Rather, Plaintiff will be **ASSESSED** and **SHALL** pay the civil filing fee of three-hundred and fifty dollars ($350.00) under the Prison Litigation Reform Act ("PLRA"), Pub. L. 104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915.

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides **SHALL** submit to the Clerk, United States District Court, 900 Georgia Avenue, Room 309, Chattanooga, TN 37402, as an initial payment, whichever is greater:

      (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

      (b) twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian **SHALL** submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00, as authorized under 28 U.S.C. § 1914(a), has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and judgment to the Sheriff and Custodian of Records at the Hamilton County Jail, the Commissioner of the Tennessee Department of Corrections, and the Attorney General for the State of Tennessee to ensure the custodian of Plaintiff's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Plaintiff **SHALL** collect the filing fee as funds become available. This order shall become a part of Plaintiff's file and follow him if he is transferred to another institution. The agency having custody of Plaintiff shall continue to collect monthly payments from Plaintiff's prisoner account until the entire filing fee of

$350.00 is paid. In addition, Plaintiff will also be **ORDERED** to provide the prison officials at any new institution with a copy of this order.

## II.    COMPLAINT−MISJOINDER OF PARTIES AND CLAIMS

In his complaint, Plaintiff first names defendants relating to his incarceration at the Hamilton County Jail claiming he was moved to a non-medical floor before his gunshot wound was completely healed, placed on the "lock-up" floor for several weeks after obstructing his commode with gauze bandages from his wound, denied recreation while on the "lock-up" floor, prevented from registering for or attending church services and other programs, and denied sufficiently strong pain medication (Court Doc. 2).

In the next section of his complaint, Plaintiff raises a claim relating to an extradition proceeding in Sessions Court. In this section of his complaint, Plaintiff complains that Officer Wilhoit denied him access to court when the officer denied him entry into Sessions Court Judge Sell's courtroom allegedly because Plaintiff refused to sign extradition papers.

Finally, Plaintiff brings claims against Erlanger Health System and two physicians at Erlanger Medical Center who performed surgery on him after being shot but before being booked at the Hamilton County Jail. Plaintiff complains that these physicians did not address his complaints that he needed stronger pain medication.

Plaintiff is attempting to file three different lawsuits as one. Indeed, the second and third portions of Plaintiff's complaint are unrelated to the claims or defendants in the first portion of his complaint and the second and third portions are unrelated to each other. Rule 18(a) permits a party to join as many claims as it has against an opposing party but it does not permit unrelated claims against different defendants. Similarly,

4

Rule 20 of the Federal Rules of Civil Procedure permits the joinder of defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; **and** any question of law or fact common to all defendants will arise in the action." Rule 20(a)(2)(A) & (B) (emphasis added). Rule 20, however, does not permit the joinder of unrelated claims and defendants in one lawsuit. *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fee−for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)").

Plaintiff has not shown that all the defendants he named participated in the same alleged unconstitutional acts or omissions or that a question of fact is "common to all defendants." None of the claims regarding his conditions of confinement relate to his criminal/extradition case or his alleged medical claims against Erlanger and two of its physicians. Thus, Plaintiff has failed to tie at least one claim to relief against each of the defendants, or show that any claim of relief arises "out of the same transaction or occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2). The jail conditions and inadequate pain medicine claims asserted in relation to his incarceration are completely unrelated to his criminal extradition claims and his claims against Erlanger and two of its physicians. Accordingly, pursuant to Rule 21 of the Federal

Rules of Civil Procedure, which authorizes the Court to "drop a party[,]" the Court **DISMISSES WITHOUT PREJUDICE** to Plaintiff's right to file a separate complaint, Officer Wilhoit, Erlanger Health Systems, Dr. Barker, and Dr. Papillion, and all claims against them from this lawsuit. *See* 4 *Moore's Federal Practice* § 21.03 (Matthew Bender 3d ed.) ("Dismissal of a misjoined party under Rule 21 is without prejudice; a claim by or against such a party may be refiled as a separate suit"); *see also Letherer v. Alger Group, L.L.C.,* 328 F.3d 262, 266-68 (6th Cir. 2003) (affirmed dropping of misjoined party and dismissing claims against that party), *recognized as overruled on other grounds in Blackburn v. Oaktree Capital Mgmt., LLC,* 511 F.3d 633, 636 (6th Cir. 2008); *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 682 (6th Cir. 1988) (no abuse of discretion in dismissal of misjoined defendants and claims, noting the "dismissal of claims against misjoined parties is appropriate").

The Clerk is **DIRECTED** to send Plaintiff the proper forms to file two separate § 1983 complaints *in forma pauperis* if he so chooses to proceed with claims against the misjoined parties. If Plaintiff chooses to bring a complaint against the dismissed defendants, a suit against Officer Wilhoit must be separate from the suit against Erlanger and its physicians. The Court's directions here should in no way be construed as indicative of how the Court would rule on such claims. Further, the Clerk is **DIRECTED** to reflect that these parties are dismissed without prejudice as misjoined parties on the Court's CM/ECF docket sheet (Court Doc. 2).

## III.   STANDARD OF REVIEW

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United*

*States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgram v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt plaintiffs from the requirement that they must comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . . " *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)—failure to state a claim upon which relief may be granted); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (In re DeLorean Motor Co.,), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard,* 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 716 (citations omitted).

Thus, although the Court holds *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations. Indeed, "even in the case of *pro se* litigants . . . leniency does not

give a court license to serve as de facto counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruling on other grounds recognized by Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010).

In addition, the Court screens the complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e). Title 28 U.S.C. §§ 1915(e)(2), 1915A, and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous or fail to state a claim upon which relief can be granted. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *abrogated on other grounds*, *Jones v. Bock*, 549 U.S. 199, 205 (2007). Although *pro se* complaints are to be construed liberally by the Court, *see Boag v. McDougall*, 454 U.S. 364, 365 (1982), the Court is required to dismiss a complaint brought by a plaintiff proceeding *in forma pauperis* "at any time the court determines" that the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).

## IV.    FACTS

In construing the complaint, the Court must accept Plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless, a category encompassing allegations that are fanciful fantastic, and delusional, [a]s those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.")

(internal punctuation and citations omitted). The Court discerns from the Plaintiff's allegations that he suffered a shotgun wound on April 5, 2011, and woke up from the operation at Erlanger Hospital under guard of the Hamilton County Sheriff's Department. On April 11, 2011, Plaintiff was booked at the Hamilton County Jail on traffic offenses and a detainer hold from the State of Georgia. On May 26, 2011, Plaintiff was re-booked on a fugitive warrant, and all traffic offenses were dismissed.

While still healing, Lt. Coppinger had Plaintiff moved from the 4th floor of the jail− a "medical floor"−to the 5th floor−a "non-medical floor"−where Plaintiff's wound repeatedly became infected. Plaintiff remained on the 5th floor until he "accidentally clogged" his commode with his soiled gauze bandages that he did not want to throw in the regular garbage since his wound was infected (Court Doc. 2). On August 19, 2011, after obstructing the commode, Plaintiff was transferred to the 3rd floor−the lock-up unit−until maintenance could fix his commode. Plaintiff remained on the 3rd floor until September 9, 2011, without being "charged with a violation." In addition, Plaintiff endured a loss of recreation for over a month from some unidentified date in November 2011 until some unidentified date in January 2012, at which time he was permitted to participate in recreation.

Cpl. Bonar has not allowed Plaintiff to "sign up" for religious Sunday services and other programs (Court Doc. 2). Physician Assistants Robert Stoakes and Bill Wilson

have refused to prescribe any pain medication stronger than Tylenol 3,[2] Lortab,[3] and Neurotin.[4]

## V.    ANALYSIS

### A.  42 U.S.C. § 1983

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1)  he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2)  the deprivation was caused by a person while acting under color of state law.  *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996).   To maintain a cause of action for damages under 42 U.S.C. § 1983, a plaintiff must also allege the defendant caused the plaintiff an injury and show actual damages.  *See Carey v. Piphus*, 435 U.S. 247, 255 (1978); *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir. 1997); *Zehner v. Trigg*, 952 F.Supp. 1318, 1321 (S.D. Ind.), *aff'd* 133 F.3d 459 (7th Cir. 1997).

Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants fair notice of the claims against them.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).   The Supreme Court has rejected the notion that a "wholly conclusory statement of claim" could survive a motion to dismiss "whenever the pleadings left open the possibility that a plaintiff

---

[2]    Tylenol 3 is Tylenol-Codeine #3 which is a combination medication containing a narcotic pain reliever (codeine) and a non-narcotic pain reliever (acetaminophen).   It is used to help relieve pain. *Drugs & Medication−Tylenol−Codeine 3 Oral*, http://www.webmd.com/drugs/drug3179Tylenol-Codeine+3+Oral.aspx?drugid=3179&drugname=Tylenol−Codeine+3+oral (July 16, 2012).

[3]    Lortab contains hydrocodone and acetaminophen.  *Active Ingredients in Lortab,* (2006-2012), http://www.druglib.com/activeingredient?actives=hydrocodone%7acetaminophen&brand=lortab

[4]    Neurontin contains gabapentin and is used to relieve nerve pain.  *Drugs & Medications−neurontin* (July 16, 2012), http://www.webmd.com/drugs/mono−8217−GABAPENTON+-+ORAL.aspx?drugid=9845&drugname=neurorontin

might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968 (2007). Thus, at a minimum, a complaint must include the necessary facts and grounds upon which a particular claim rests. Additionally, to state a § 1983 claim, a plaintiff must allege sufficient facts that, if true, would establish he incurred an injury when the defendants deprived him of a right secured by the Constitution of the United States while they acted under color of law. *See Brock*, 94 F.3d at 244.

### B. Identity of Defendants

Plaintiff has named the Hamilton County Sheriff's Department, Sheriff Jim Hammond, Chief Parsons, Capt. Swope, Lt. Coppinger, Cpl. Bonar, Physician Assistant Stoakes, and Physician Assistant Bill Wilson as Defendants in this case.[5] Plaintiff, however, has failed to identify in what capacity he has sued Defendants. The complaint does not indicate whether Defendants are being sued in their official capacity, individual capacity, or both.

A suit brought against a public, government official will not be construed as seeking damages against the defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. ), *cert. denied,* 515 U.S. 1116 (1995); *Thiokol Corp. v. Department of Treasury, State of Mich., Revenue Div.,* 987 F.2d 376, 383 (6th Cir. 1993); *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993); *Hardin v. Straub*, 954

---

[5]     As previously noted, the Clerk added Hamilton County Tennessee as a defendant and omitted Hamilton County Sheriff's Department as a defendant on the Court's CM/ECF docket sheet. In addition, although nowhere in the complaint does Plaintiff indicate whether he is suing defendants in their official or individual capacities, on the Court's CM/ECF docket sheet the Clerk indicated that all defendants were sued in both, their official and individual capacities. This is incorrect. Although, Plaintiff subsequently filed a motion requesting to amend his complaint to sue all parties in both their official and individual capacities, that motion has not been granted.

F.2d 1193, 1199-1200 (6th Cir. 1992); *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989); *Johnson v. Turner*, 855 F.Supp. 228, 231 (W.D. Tenn. 1994), *aff'd*, 125 F.3d 324 (6th Cir. 1997). Generally, absent any express indication the defendant is being sued in his individual capacity, the Court must assume he is being sued only in his official capacity as an employee of the governmental entity. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir.), *cert. denied*, 502 U.S. 883 (1991); *Wells*, 891 F.2d at 593-94.

Although it is preferable that plaintiffs explicitly state whether a defendant is sued in his individual capacity, the failure to do so is not fatal if the complaint or other filed documents provide sufficient notice to the defendant that he is being sued as an individual. In *Moore v. City of Harriman,* 272 F.3d 769 (6th Cir. 2001), the caption on Moore's complaint listed the officers' names, not their official titles; the complaint referred to the officers throughout as the "individual defendants"; the complaint identified the officers as "acting for themselves and for the City . . ."; and Moore sought compensatory and punitive damages against each of the defendants. Noting that taken as a whole, the complaint likely provided sufficient notice to the officers that they were being sued as individuals, the Sixth Circuit ruled that "Moore's response to the officers' motion to dismiss clarified any remaining ambiguity: 'The individuals named are police officers who are being sued in their individual capacities for using excessive and unreasonable force while making an arrest of the Plaintiff on April 7, 1996." *Moore v. City of Harriman*, 272 F.3d at 773-74.

Although in the instant case Plaintiff does seek monetary damages "in the amount of $2.5 million dollars," (Court Doc. 2), and the request of monetary damages is one factor that might place an individual on notice that he is being sued in his individual

capacity, that alone is insufficient to place an official on notice that he is being sued in his individual capacity. *See Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) ("Although Moore recognizes that the request for monetary damages is one factor that might place an individual on notice that he is being sued in his individual capacity, we do not read that case as holding that a request for money damages is alone sufficient to place a state official on notice that he is being sued in his individual capacity").

The complaint before this Court is not analogous to the complaint in *Moore*; there is no ambiguity in the instant complaint as to the capacity in which Plaintiff is suing Defendants. Specifically, in this case, not only did Plaintiff fail to specify in his complaint that he was suing Defendants as individuals, rather than in their official capacity, he identified Defendants in the style of the case and in the body of the complaint by their official titles (Court Doc. 2). Thus, absent any clear indication in the complaint that Defendants are being sued in their individual capacity, the Court must assume they are being sued in their official capacity. *Id.* at 772.

A claim against Defendants in their official capacity is treated as an action against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem*, *Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Because Defendants have been sued only in their official capacity as employees of Hamilton County, Tennessee, the Court must proceed as if Plaintiff has in fact sued Hamilton County. Therefore, in order to prevail, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Hamilton County. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690-91(1978);

*Leach v. Shelby County Sheriff*, 891 F.2s 1241, 1245-46 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

In order to prevail in an action against a defendant in his official capacity, a plaintiff must show, first, that he has suffered harm because of a constitutional violation and second that a policy or custom of the entity−in this case Hamilton County−caused the harm. *See Collins v. Harker Heights, Tex.,* 503 U.S. 115, 120 (1992). Plaintiff must identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy; all of which Plaintiff has failed to do. *See Garner v. Memphis Police Dept.*, 8 F.3d 358, 363-64 (6th Cir. 1993), *cert. denied,* 510 U.S. 1177 (1994) (citation omitted).

Plaintiff does not allege that the violation of his rights resulted from any policy or custom on the part of Hamilton County. Plaintiff's failure to demonstrate that the alleged violations of his constitutional rights resulted from acts representing official policy or custom adopted by Hamilton County has resulted in his failure to state a constitutional violation. Therefore, Defendants, in this action, are entitled to judgment as a matter of law as Plaintiff has not stated a claim against any of the defendants in their official capacity.

Even assuming Plaintiff sued Defendants in their individual capacities he would not be entitled to relief because, as explained below, he has not shown that he has suffered harm because of a constitutional violation.

14

1. *Hamilton County Sheriff's Department*

The first defendant named by Plaintiff is the Hamilton County Sheriff's Department. The Hamilton County Sheriff's Department is not a legal entity amenable to being sued under 42 U.S.C. § 1983. The Hamilton County Sheriff's Department is not a municipality but is merely a municipal agency or department of Hamilton County rather than a separate legal entity. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (police departments are not legal entities which may be sued); *Obert v. The Pyramid*, 381 F.Supp.2d 723, 729 (W.D. Tenn. 2005) (police department is not a legally-existing entity); *see also De La Garza v. Kandiyohi County Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (neither a county jail nor sheriff's department is a suable entity); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[s]heriff's departments are not usually considered legal entities subject to suit"). Therefore, the Hamilton County Sheriff's Department is not a suable entity for § 1983 purposes and all claims brought by Plaintiff against the Hamilton County Sheriff's Department pursuant to 42 U.S.C. § 1983 will be **DISMISSED**.

2. *Claims Against Supervisors*

Plaintiff names Sheriff Jim Hammond, Chief Parsons, and Captain Swopes as Defendants in this action but does not allege any specific unconstitutional conduct on the part of any of these three Defendants. Rather, Plaintiff contends Sheriff Hammond is the overseer of the county jail and is responsible for the activities of his employees, and Chief Parsons and Captain Swope are also overseers of the jail and are responsible for making sure the jail is run in an orderly manner. In addition, Plaintiff

claims Lt. Coppinger allowed his officers to violate Plaintiff's rights.[6]  Although not clear,

the Court construes this allegation as one that Lt. Coppinger allowed one of his officers

to deny Plaintiff yard exercise.   Apparently, Plaintiff is relying on the doctrine of

*respondeat superior* to impose liability on these supervisors.

It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 on

a *respondeat superior* theory of liability.   *Monell v. Department of Social Services*, 436

U.S. 658, 691-95 (1978).   The right to direct or control employees is, by itself,

insufficient to impose liability upon a defendant for the unconstitutional acts of

subordinates.   *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 727 (6th Cir.

1996).   A supervisor cannot be held liable under § 1983 for the constitutional violations

of those he supervises unless it is shown "that the supervisor encouraged the specific

incident of misconduct or in some other way directly participated in it."   *Bellamy v.

Bradley*, 719 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845 (1984).   Therefore, to

state a claim against a defendant for supervisory liability, a plaintiff must allege a direct

causal link between the acts of the subordinate and the supervisory defendant.   *Hays v.

Jefferson County, KY.,* 668 F.2d 869, 872 (6th Cir. 1982).

Plaintiff has not connected any alleged unconstitutional conduct of the

subordinates to their supervisors.   Even assuming Plaintiff notified these supervisors of

the alleged unconstitutional conduct, such is insufficient to demonstrate a direct causal

link between the alleged acts of the subordinates and the supervisory Defendants so as

to create liability under § 1983.   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)

(supervisor and administrators not liable merely because they failed to intervene or act

---

[6]     Plaintiff alleges Lt. Coppinger was personally involved in violating his rights and that Lt. Coppinger allowed his officers to violate Plaintiff's rights.  The Court will only address the claim that Lt. Coppinger allowed his officers to violate Plaintiff's rights in this section.

upon prisoner's complaint); *Yoder v. Seals*, 2009 WL 737099 (E.D. Tenn. Mar. 19, 2009) ("A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983") (internal quotations and citations omitted)).

Not only has Plaintiff not raised a viable constitutional claim against any of the defendants he alleged directly violated his rights, as explained *infra* in this memorandum, he has not alleged Sheriff Hammond, Chief Parsons, Capt. Swope, or Lt. Coppinger encouraged the alleged misconduct, or authorized or approved an unconstitutional act or procedure that resulted in the alleged misconduct. Finally, Plaintiff does not allege any of these supervisory defendants failed to discharge a duty or adopted a policy that resulted in a constitutional violation.

In sum, Plaintiff has not alleged the Sheriff, Chief, or Captain committed any unconstitutional acts themselves, and he has failed to allege a direct causal link between the alleged acts of the subordinates of these supervisory defendants, including Lt. Coppinger, and the supervisors, themselves. There is simply nothing in the complaint linking these supervisors to any alleged unconstitutional violation (other than that previously noted in relation to Lt. Coppinger which will be addressed below), much less any causal link of the kind necessary to state a claim for supervisory liability. Accordingly, the claims against Supervisors Sheriff Hammond, Chief Parsons, Capt. Swope, and Lt. Coppinger will be **DISMISSED** for failure to state a cognizable claim pursuant to 42 U.S.C. § 1983 and Defendants Sheriff Hammond, Chief Parsons, and Capt. Swope will be **DISMISSED** from this lawsuit. 28 U.S.C. §§ 1915A and 1915(e).

### 3. *Lt. Coppinger*

Plaintiff's complaint is difficult to decipher, but as the Court discerns it, Plaintiff alleges Lt. Coppinger himself, violated Plaintiff's constitutional rights in three instances. First, Plaintiff contends Lt. Coppinger was directly involved in having him moved in June of 2011, from the "medical" floor (4th) to a "non-medical" floor (5th) where his wound became infected several times. Although not clear, the Court ascertains Plaintiff is also claiming that after he overflowed his commode with soiled gauze bandages from his wound, Lt. Coppinger had him moved to the 3rd floor lock-up unit on August 19, 2011, where he stayed until September 9, 2011, "without any charge." (Court Doc. 2).

#### a. Move From Medical Floor to Non-Medical Floor

To the extent Plaintiff claims that simply moving him to the 5th floor violated his Eighth Amendment right to be free from cruel and unusual punishment, he has failed to state a claim as prisoners do not have a constitutional right to reside on particular floor of the prison. Thus, the moving of Plaintiff from the medical floor to the non-medical floor in and of itself does not state a constitutional violation. Presumably, Plaintiff is claiming Defendant Lt. Coppinger was deliberately indifferent to his serious medical needs when he had Plaintiff moved off the medical floor while his wound was still healing

It is a violation of the Eighth Amendment to be deliberately indifferent to a prisoner's serious medical needs. *Estelle v.* Gamble, 429 U.S. 97, 106 (1976). A "serious medical need is one that if left untreated could result in further significant injury

or the unnecessary and wanton infliction of pain." *Id.* at 104. To state an Eighth Amendment claim that prison officials violated the constitutional prohibition against cruel and unusual punishment, a plaintiff must show the officials were deliberately indifferent to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). A prison official acts with deliberate indifference "only if he knows the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Acts of negligence, neglect, medical malpractice, or unsuccessful medical treatment are insufficient to give rise to a § 1983 claim. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir., 1991).

Plaintiff's claim that he was moved from the medical floor to a non-medical floor and his wound later became infected falls short of a constitutional claim as such allegations do not amount to deliberate indifference to his serious medical needs. Plaintiff was shot on April 5, 2011, booked at the jail on April 11, 2011, and remained on the medical floor until June 2011, at which time he was moved to a non-medical floor. Notably, the fact that Plaintiff's wound later became infected does not establish the move to the non-medical floor was an adverse act and that but for that act, his wound would not have become infected.

Moreover, there is no evidence from which the Court can even infer that Lt. Coppinger possessed the required culpable state of mind as there is nothing to indicate

the lieutenant was aware that Plaintiff faced a substantial risk of serious harm−even assuming Plaintiff did face a substantial risk of serious harm−by moving him off the medical floor.  Not only is there a lack of evidence indicating Plaintiff faced a substantial risk of serious harm by being moved off the medical floor, Plaintiff has not alleged he had medical restrictions related to the wound that required he be housed on the medical floor or presented any evidence indicating the move was unconstitutional.  Therefore, Plaintiff's claim that he was transferred to a non-medical floor and subsequently suffered with an infected wound is insufficient to state an Eight Amendment violation.

Accordingly, Plaintiff's claim that he was moved from a medical floor to a non-medical floor is not actionable under 42 U.S.C. § 1983 as an Eighth Amendment medical claim and will be **DISMISSED**.

b.    Transfer to Lock-Up Unit

Similarly, Plaintiff's claim that he was transferred to the lock-up unit on August 19, 2011, after obstructing his commode with soiled gauze bandages, and remained there until September 9, 2011, "without a charge[,]"does not state a constitutional violation.  In *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), the Supreme Court held that a liberty interest "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   In the prison context, these protected liberty interests are essentially limited to the loss of good time credits or placement for an indeterminate period of time at one of this country's super-maximum security prisons.  *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (discussing the *Sandin* holding i.e., no liberty interest protections against a 30-day assignment in segregation because it did not

present a dramatic departure from the basic conditions of the inmates sentence). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perameters of the sentence imposed by a court of law" *Sandin*, 515 U.S. at 485 (holding that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.")

Accordingly, Plaintiff's claim that he was placed in lock-up after obstructing his commode with soiled gauze bandages will be **DISMISSED** as he has not shown that such lock-up was so unusual and severe as compared to his previous conditions of confinement or as compared to the general prison population so as to constitute an "atypical and significant hardship."

c. <u>Denial of Recreation for Over a Month</u>

Plaintiff contends he lost his recreation rights for over a month "without a charge." (Court Doc. 2). For the reasons explained below, Plaintiff's factually unsupported claim is insufficient to state a constitutional violation.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). There are two elements to an Eighth Amendment conditions of confinement claim. "First, the deprivation alleged must be, objectively, sufficiently serous; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. at 834 (internal punctuation and citations

omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

Although "total or near total deprivation of exercise or recreational opportunity, without penological justification violates the Eighth Amendment guarantees[,]" *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983), Plaintiff does not claim he was totally denied outdoor or indoor recreation as he does not allege he was not taken "to the yard" at any time during this time period or that he was prevented from running in place, doing push-ups, sit-ups, or other exercises in his jail cell or elsewhere in the jail facility. Rather, he simply states he had "loss of recreation" for over a month. Notably, the Sixth Circuit has not "set a minimum amount of time a prisoner must have access to outdoor recreation[.]" *Rodgers v. Jabe*, 43 F.3d 1082, 1086-87 (6th Cir. 1995). Not only is Plaintiff's allegation that he was deprived of recreation for a limited time insufficient to show that he was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim, *see Wilson v. Seiter*, 501 U.S. at 298, he has not demonstrated that the person who allegedly denied him recreation acted with deliberate indifference, which is also required for an Eighth Amendment claim.

In one of the numerous motions he filed, Plaintiff clarified this claim asserting after he and Officer Saddler had a disagreement, that any time the officer took other inmates from his tier to the yard, Plaintiff was told to step back because he was not permitted to accompany them (Court File No. 9). This allegation, however, without more, does not demonstrate Plaintiff was denied all outdoor and indoor recreation for a

little over a month or that the officer acted with a sufficiently culpable state of mind. This allegation simply alleges he was not permitted to participate in recreation in the yard with the inmates in his tier. Similarly, the claim that this occurred after a disagreement with the officer, without more, fails to sufficiently allege the necessary state of mind required to adequately assert an Eighth Amendment violation.

Consequently, Plaintiff's failure to set forth any facts which support a claim that his constitutional rights were violated is fatal to his claim that he was denied yard exercise with his tier for a little more than a month. Accordingly, Plaintiff's denial-of-recreation claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

### 4. *Cpl. Bonar*

Plaintiff claims Cpl. Bonar "has been denying" him "religious sunday [sic] services, and other programs." (Court Doc. 2). According to Plaintiff, Cpl. Bonar did not allow him to register for the services. Once again, Plaintiff's factually unsupported claim is insufficient to state a constitutional violation. Not only does Plaintiff fail to identify the religious services and other programs for which he allegedly attempted to register, he does not explain how Cpl. Bonar prevented him from registering for religious services and other programs, how often this alleged deprivation has occurred, or any of the circumstances surrounding the situation. For example, he does not say whether Cpl. Bonar makes rounds asking inmates if they want to register but skips Plaintiff, whether Cpl. Bonar specifically told him he was not permitted to register when he inquired about doing so, or whether he even inquired about registering for the services and programs. In addition, Plaintiff fails to identify the dates that Cpl. Bonar allegedly denied him

access to register for the services and programs. Instead, Plaintiff has presented nothing other than his bald claim that Cpl. Bonar "is not allowing me to sign up." (Court Doc. 2).

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Inmates retain their First Amendment right to exercise their religion, but the right may be subjected to reasonable restrictions and limitations. *Abdur-Rahman v. Michigan Dept. of Corrections,* 65 F.3d 489, 491 (6th Cir. 1995) (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A prison regulation or policy that might unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

In order to allege a constitutional violation based on a free exercise claim, a prisoner must show the actions of prison officials caused him to suffer a substantial burden to his sincerely-held religious beliefs. Thus, a prisoner must show that "the belief or practice asserted is religious in the person's own scheme of things" and is "sincerely held." *Flagner v. Wilkinson*, 241 F.3d 375, 481 (6th Cir.), *cert. denied*, 534 U.S. 1071 (2001). Here, Plaintiff has failed to present any allegations regarding his "sincerely-held religious beliefs" or that he suffered a substantial burden to his sincerely-held religious beliefs. Thus, he has failed to allege a constitutional violation.

In sum, Plaintiff does not allege he was denied his right to exercise his religion but rather just complains that for some unidentified period of time Cpl. Bonar did not allow him to sign up for Sunday Religious Service and some other unidentified

24

programs. Consequently, Plaintiff has not alleged a constitutional violation. Because Plaintiff has failed to provide any facts to support his claim that he was denied religious services and other programs, he has failed to allege a constitutional violation of his right to exercise his religion. Accordingly, Plaintiff's claim that he was denied religious services and other programs falls short of stating a constitutional violation and therefore will be **DISMISSED** for failure to state a claim.

For the foregoing reasons, Plaintiff's complaint will be **DISMISSSED** in its entirety for failure to state a claim (Court Doc. 2). The Court will now address the numerous motions Plaintiff filed after filing his complaint.

## VI.    MOTIONS

After filing his initial complaint and motion to proceed *in forma pauperis* Plaintiff filed approximately eighteen documents, ten of which have been docketed as motions and two of which were not so docketed but are actually motions (Court Docs. 3, 5, 7, 7-1, 8, 9, 13, 15, 16, 17, 18, & 19).

### A.    Motion to File

Plaintiff filed an unidentified document requesting that it be accepted "as a forma pauperis." (Court Doc. 3). Although the Clerk docketed this document as a motion, it is actually a letter stating that Plaintiff previously mailed a §1983 complaint and motion to proceed *in forma pauperis* which he claims never reached the Court; a duplicate of the original complaint that he filed, that in fact, did reach the Court; and an inmate request showing that he had requested a copy of his inmate account statement (Court Doc. 3). Plaintiff's correspondence indicates he was under the mistaken impression that his

complaint and *in in forma pauperis* application were not received and was sending these documents for filing.  Accordingly, this motion is **DENIED** (Court Doc. 3).

### B.    Injunctive Relief

Plaintiff filed a letter, which the Clerk and Court construe as a motion for injunctive relief (Court Doc. 5).   In support of the motion, Plaintiff filed a memorandum requesting an injunction against all the supervisors and officers at the Hamilton County Jail claiming they are interfering with his access to Court as they are interfering with his mail to the courts and his family (Court Doc. 6).  Without providing any factual support, Plaintiff claims documents he sent to the Court and a friend on February 26, 2012, never reached their destination, and two letters mailed to friends or family were not received.   Plaintiff requests the Court to issue an order to the Hamilton County Jail requiring one supervisor to be responsible for mailing and receiving his personal mail, and requiring that his legal mail be processed through return receipt.[7]

Aside from the fact that Plaintiff is mistaken in his belief that the Court has not received all his mailings, he has failed to abide by the Federal Rules of Civil Procedure in requesting injunctive relief.  Rule 65(a) provides for preliminary injunctions with notice and section (b) provides for temporary restraining orders without notice.   Plaintiff has not certified that he served all of the defendants with notice of his request for injunctive relief.   Therefore, the Court will proceed under the provisions of the Rule for issuing a temporary restraining order without notice. Fed. R. Civ. P. 65(b)(1) provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

---

[7]      Nothing in the Constitution grants Plaintiff the right to dictate the conditions under which his mail should be handled or to demand that one supervisor be responsible for mailing and receiving his personal mail and that his legal mail be processed through return receipt.

26

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney, certifies in writing any efforts made to give notice and the reasons why it should not be required.

Plaintiff has provided neither an affidavit nor verified complaint. In addition, Plaintiff has failed to certify in writing any efforts made to give notice and the reasons why it should not be required. Nevertheless, even assuming the motion was properly supported with an affidavit or a verified complaint and a certificate in writing of any efforts to give notice to Defendants and why notice should not be required. Plaintiff has failed to provide anything more than a factually baseless claim that, in the absence of injunctive relief, he faces irreparable harm. Consequently, as explained below, Plaintiff is not entitled to the requested relief.

The Court must consider four elements in determining whether to grant a request for preliminary relief. The Court must consider the following: "1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; 2) whether the movant has shown that irreparable injury will occur absent the injunction; 3) whether the preliminary injunction would harm third parties; and 4) whether the public interest would be served by issuing the preliminary injunction." *Sandison v. Michigan High School Athletic Association Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). The movant must, at a minimum, show some likelihood of success on the merits.

To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate

opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith,* 430 U.S. 817, 825 (1977). The Supreme Court clarified the *Bounds* decision in *Lewis v. Casey* by finding a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis v Casey,* 518 U.S. at 349.

Here, Plaintiff is unable to show any likelihood of success on the merits, as the prison official's actions did not hinder his efforts to pursue a legal claim as the Court has received all of his documents. Specifically, the Court received Plaintiff's §1983 complaint and motion to proceed *in forma pauperis* on February 28, 2012, and the Clerk docketed it on March 5, 2012 (Court Docs. 1, 2). The Clerk received a letter from Plaintiff claiming the defendants were interfering with his legal mail On March 5, 2012, which the Clerk docketed on March 19, 2012 (Court Doc. 4). On March 13, 2012, the Clerk received and docketed a duplicate copy of Plaintiff's §1983 complaint (Court Doc. 3). The docket sheet clearly reflects that Plaintiff's documents were being received by the Court, thus his allegations are incorrect. Thus, this element does not weigh in Plaintiff's favor.

Next, Plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991). Because Plaintiff's allegations are, in fact, incorrect as they relate to his mail to the Court and unsubstantiated as they relate to his personal mail, he has failed to show he faces irreparable harm.

In sum, there are twenty-two docket entries in this case, all of which are the result of Plaintiff's filings. Plaintiff's unsupported allegation that the Court, family, and friends have not received correspondence he mails is insufficient to warrant relief. Moreover, Plaintiff has asserted no actual injury or specific harm he has suffered as a result of the alleged mishandling of his mail or identified any irreparable injury that would justify the imposition of the requested injunctive relief.

In addition, it appears that granting the requested relief would cause a substantial burden to others, as it would unduly subject the prison officials to premature judicial oversight. Furthermore, it does not appear any public interest would be advanced by issuing the injunctive relief in this case. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994); *also see Williams v. Carlton*, 98 F.3d 1343 (6th Cir. Oct. 7, 1996), *available in* 1996 WL 577635, at *1. Consequently, Plaintiff has failed to provide any factors to favor granting injunctive relief.

Accordingly, Plaintiff's motion for a preliminary injunction will be **DENIED** for the reasons set forth above (Court Doc. 5).

### C.    Motion to Amend

The docketing of Plaintiff's next several documents is confusing. Plaintiff filed a motion requesting to amend the complaint to sue Defendants in both their official and individual capacities (Court Doc. 7). Accordingly, because the Court disposed of the complaint *supra* addressing the claims against Defendants both in their official and individual capacities and finding Plaintiff failed to state a claim upon which relief may be granted against any defendant in either capacity, the motion to amend the complaint to

sue Defendants in both their individual and official capacity is **DENIED** as futile (Court Doc. 7).

Although Plaintiff filed a separate document requesting to amend his complaint with a new defendant, Officer Woodall, the Clerk docketed it as an attachment (Court Doc. 7-1). It should have been docketed as a motion. In this document, which is a motion seeking to amend the complaint, Plaintiff seeks to add Officer Woodall as a defendant claiming that after he obstructed his commode with infected gauze bandages, the officer turned the water off in his lock-up cell at 2:00 p.m on or about August 24, 2011 (Court Doc. 7-1). Further, according to Plaintiff, second shift began at 3:00 p.m. and during second shift Officer Bowman turned his water on a couple of times so he could flush the commode and get a drink of water. The next day Plaintiff's water was turned on by the first shift officers.

Plaintiff does not have a constitutional right to have the water turned on in his cell 24 hours a day. The constitutional prohibition against cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson V. Seiter*, 501 U.S. 294, 298 (1991). The shutting off of Plaintiff's water temporarily, does not amount to a deprivation of "the minimal civilized measure of life's necessities[.]" Accordingly, because Plaintiff has failed to raise a constitution claim, his motion to amend is **DENIED** as futile (Court Doc. 7-1).

30

### D.  Motion to Amend Motion for Injunction

Plaintiff filed a motion requesting to amend his request for an injunction with two new defendants, Ms. Gloria Hennessey and Mr. Kevin Matthews, claiming "they are doing their best to deny me access to the courts" by only permitting him to mail "return receipt request" once a month (Court Doc. 8).[8]  As noted above, Plaintiff does not have a constitutional right to mail his correspondence or documents "return receipt requested."  Moreover, Plaintiff's claim that these two parties denied him access to court is incredible as Plaintiff has filed at least twenty-two documents in this case.

Plaintiff's failure to provide any credible factual support to this claim amounts to a failure to state a constitutional claim upon which relief can be granted.  To the extent he requests to add these two parties in their official capacity, the request is denied as the Court has determined Plaintiff has failed to allege any constitutional violations surrounding his mail and access to court.  Absent an underlying constitutional violation Plaintiff cannot hold Hamilton County liable for any of his alleged claims. *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008). Consequently, Hamilton County is entitled to judgment as a matter of law.   Accordingly, Plaintiff's motion to amend his previous motion requesting injunctive relief with Ms. Hennessey and Mr. Mathews in their official and individual capacities will be **DENIED** as futile (Court Doc. 8).

### E.  Motion to Amend Complaint

In this motion, Plaintiff requests to add Officer Saddler as a defendant claiming the officer denied him recreation for a little more than a month i.e., from  some unidentified date in November 2011 until some unidentified date in January 2012, with "no charge," while allowing other inmates in his tier to go to the yard (Court Doc. 9).

---

[8]     The Clerk docketed this document as an amended injunction order.

Once again, Plaintiff has failed to provide any factual support for his allegation other than to say when Officer Saddler came to the door to take his tier out for exercise in the yard, Plaintiff was told to turn around because he was not permitted to go out. Plaintiff speculates this was the result of a "verbal disagreement" he had with Officer Saddler in mid-November 2011.

"'The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred.'" *Spencer v. Bouchard,* 449 F.3d 721, 727 (6th Cir. 2006) (quoting *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000). An Eighth Amendment claim is comprised of an objective and subjective component−a sufficiently grave deprivation and a sufficiently culpable state of mind. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). "A prisoner's conditions of confinement are sufficiently grave if they fall beneath 'the minimal civilized measure of life's necessities' as measured by 'contemporary standards of decency.'" *Rodgers v. Jabe,* 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prison official inflicts such conditions with a sufficiently culpable state of mind if he does so with "deliberate indifference." *Rodgers v. Jabe*, 43 F.3d at 1086. While the Sixth Circuit has not set a minimum amount of time a prisoner must have access to outdoor recreation in order to avoid violating the Eighth Amendment's objective component, *id.,* it has held that a "a total or near-total" exercise deprivation, absent penological justification, impinges on an inmate's Eighth Amendment right. *Patterson v. Mintzes,* 717 F.2d 284, 289 (6th Cir. 1983); *also see Rahman X. v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (holding that the inability to go outside for three months was not a constitutional violation). The Court's research did not reveal a

Supreme Court or Sixth Circuit case determining when the denial of yard exercise rises to the level of a constitutional violation. Nevertheless, it is important to note that Plaintiff does not claim he was denied all opportunity for exercise.

The Eighth Amendment entitles prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985) (directing the district court to resolve "the yard time controversy" by determining "the *minimum* amount of yard time necessary for the inmates' well-being under minimal civilized standards) (emphasis in original). Plaintiff does not contend that he was denied sufficient opportunity for recreation or other physical activity sufficient to maintain reasonably good health. Rather, Plaintiff claims he was not permitted to participate in outside exercise with his tier for a little more than a month. Without greater specificity, Plaintiff has failed to state a constitutional violation.

Moreover, Plaintiff does not allege Officer Saddler acted with a sufficiently culpable state of mind, as speculation that he was denied yard exercise as a result of a verbal disagreement he had with the officer is insufficient to meet the subjective component of a sufficiently culpable state of mind to properly raise an Eighth Amendment violation. Plaintiff's claim that he was not permitted outdoor exercise since mid-November 2011, after having a verbal disagreement with Officer Saddler, is insufficient to demonstrate Officer Saddler acted with deliberate indifference to a substantial risk that Plaintiff would suffer serious harm. It is not the Court's duty to conjure up unpleaded facts to save a complaint from dismissal, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007), as the burden of pleading facts, that, if true, will

support a constitutional violation, lies with a plaintiff.  Here, Plaintiff has simply failed to carry his burden.

However, even assuming the denial of yard exercise amounted to a constitutional violation, it appears Plaintiff would be entitled to no relief as Defendants would be entitled to qualified immunity.  Qualified immunity protects government officials from liability for monetary damages in a §1983 case, unless, at the time of the alleged violation, the officials conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known.  *Pearson v. Callanan,* 555 U.S. 223, 231 (2009).  Here, given the largely undeveloped nature of the law in this area i.e., neither the Supreme Court nor the Sixth Circuit have determined when the denial of yard exercises rises to the level of a constitutional violation, the Court cannot say that a reasonable jailer would have known that depriving a pretrial detainee of yard exercise for a little over a month violated a clearly established constitutional right.  Accordingly, assuming without deciding that the denial of yard exercise in this case amounts to a constitutional violation, Defendants are entitled to qualified immunity and this claim must be dismissed.

To the extent Plaintiff is attempting to raise a retaliation claim, his mere speculation is insufficient to raise such a claim.  There are three elements of a retaliation claim:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has not alleged sufficient facts to enable the Court to do anything more than

speculate that Officer Saddler's conduct might possibly have been in reaction to the verbal disagreement he had with Plaintiff. Plaintiff simply has failed to meet his burden of showing a causal connection between his protected conduct (assuming a verbal disagreement with a prison guard is protected) and the alleged adverse action. Accordingly, to the extent Plaintiff is attempting to raise a retaliation claim, he has failed to do so.

To the extent Plaintiff raises this claim against Officer Saddler in his official capacity, the proper party to address the claims against Officer Saddler in his official capacity is Hamilton County. In order to prevail against Hamilton County, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Hamilton County. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690-91 (1992). Thus, Plaintiff must show, first, that he has suffered harm because of a constitutional violation and second, that a policy or custom of the entity−in this case, Hamilton County−caused the harm. *See Collins v. Harker Heights, Texas,* 503 U.S. 115, 120 (1992). Here, aside from the fact the Court has ruled Plaintiff has not raised a constitutional violation, Plaintiff has failed to allege that any custom or policy of Hamilton County was the moving force behind the alleged constitutional violation he suffered. Consequently, he has failed to satisfy his burden of demonstrating the alleged violation of his rights resulted from any policy or custom on the part of Hamilton County.

Accordingly, because Plaintiff has failed to state a claim against Officer Saddler in either his official or individual capacity, Plaintiff's motion to amend will be **DENIED** as futile (Court Doc. 9).

### F. Motion to Amend Complaint

Plaintiff has filed a duplicate motion requesting to amend his complaint to sue the defendants in both their individual and official capacities (Court Doc. 13). This duplicate motion will be **DENIED** (Court Doc. 13).

### G. Motion to Amend Complaint With Exhibits

Plaintiff has filed a motion to amend his complaint with his medical records from Erlanger, presumably in support of his claims against his treating physicians there (Court Doc. 15). Because the Court has previously concluded Plaintiff misjoined these parties, it has dropped Erlanger Health Systems, Dr. Papillion, and Dr. Barker from this complaint pursuant to Rule 21 of the Federal Rules of Civil Procedure. Accordingly, the motion to amend the complaint with exhibits pertaining to the claims against these defendants will be **DENIED** (Court Doc. 15).

### H. Motion to Amend Complaint With Exhibits

In this motion, Plaintiff seeks to amend his complaint by adding exhibits to support his request that the Court order the jail officials to send his legal mail certified (Court Doc. 16). As previously stated, not only is Plaintiff incorrect in his claim that the Court is not receiving his legal mail, he has no constitutional right to require the jail to send his mail certified. Accordingly, Plaintiff's motion to amend his complaint with these exhibits will be **DENIED** as futile (Court Doc. 16).

### I. Motion for Cease and Desist Order

In this motion Plaintiff claims "these defendants" have denied him the right to mail a notice of his intent to send a medical malpractice case by certified mail (Court Doc.

17).  Notably, Plaintiff does not claim that he has funds to send the mail certified, but rather it appears he expects the jail to pay the fees for sending his mail certified.

Nevertheless, although prisoners have a constitutional right to access the Court, *Bounds v. Smith*, 430 U.S. 817, 821 (1997), there is no constitutional right to send mail certified or return receipt requested.  *See Schack v. Wainwright*,  391 F.2d 608 (5th Cir. 1968).  Thus, a constitutional right of access to the courts exists, but to establish a claim for any violation of the right of access to the courts a prisoner must show there was an inadequacy in the prison's legal access program that caused him an actual injury.  *See Lewis v. Casey*, 518 U.S. 343, 350-51(1996).  To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement.  *Id.* at 355.  As the Court explained In *Lewis v. Casey*:

> In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip−and−fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. at 355 (emphasis in original).

Plaintiff's alleged denial of access to the courts does not pertain to his conviction or conditions of confinement, thus a cease and desist order is not warranted as he has not alleged a constitutional violation.  Accordingly, Plaintiff's motion requesting a cease and desist order is **DENIED** (Court Doc. 17).

### J. Motion for Appointment of Counsel

Plaintiff requests that counsel be appointed "[d]ue to some of the complexity of said case[.]" (Court Doc. 18).  The Court has determined that Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted.  Accordingly, Plaintiff's motion requesting the appointment of counsel is **DENIED** as **MOOT** (Court Doc. 18).

### K. Motion to Amend Complaint

Plaintiff's next motion is virtually a duplicate of his previous motion to amend his complaint to add Officer Saddler as a defendant which was docketed as Court Document Number 9 (Court Doc. 19).  Accordingly, the motion is **DENIED** (Court Doc. 19).

### L. Motion for Injunctive Order

In his final motion, Plaintiff requests an injunctive order on the basis that he disagrees with the manner in which P.A. Stokes is treating his Hepatitis C illness (Court Doc. 22).  Plaintiff claims he requested to see a doctor regarding his liver and on two occasions his liver enzymes were tested revealing that they were slightly elevated (Court Doc. 22,at 8 & 9).  Specifically, his February 1, 2012, test reveals Plaintiff's AST (SGOT) was "44 H" and the normal limits are "5-34" and his Total BILI was "1.3 H" and the normal limits are "0.2-1.2" (Court Doc. 22, at 8).  Plaintiff's May 8, 2012, tests revealed his AST was "H 41" and the normal limits are reflected as (5-34), and his Total Bilirubin was "H 1.3) and normal limits are "0.2=1.2) (Court Doc. 22, at 9).  Medical advised Plaintiff that the doctor said his liver enzymes were normal or barely elevated and at this time no treatment is required (Court Doc. 22, at 11).  On June 28, 2012,

another test was performed which indicated the presence of a virus (Court Doc. 22, at 12). That test reflects Plaintiff's HCV RNA (TU/ML) is 400,000 and his HCV RNA (LOG COPIES/ML) is 1,000,000. The document notes "[r]esults greater than or equal to 100 Copies/mL of HCV RNA indicate the presence of virus-specific nucleic acid sequence."

In response to Plaintiff's inquiry about his treatment, medical personnel responded that "[a]ll treatment that you have received is reviewed and approved by the supervising physician." (Court Doc. 22, p. 10). Another response to Plaintiff's inquiry explained that his "[l]iver enzymes normal or barely elevated. GI doctor said he would not treat @ this time, just monitor." (Court Doc. 22, p. 11). It does not appear Plaintiff made any inquiry as to the test indicating the presence of a virus.

Aside from the fact that a difference in opinion as to medical treatment does not amount to a constitutional violation *see Woodberry v. Simmons*, 146 Fed. Appx. 976, 977 (10thCir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"), Plaintiff has failed, once again, to abide by the pleading requirement set forth in Federal Rule of Civil Procedure Rule 65(a) or (b). As previously stated, Rule 65 (a) provides for preliminary injunctions with notice and section (b) provides for temporary restraining orders without notice. In this case, Plaintiff has not certified that he served any of the defendants with notice of his request for injunctive relief. Therefore, the Court will proceed under the provisions of the Rule for issuing a temporary restraining order without notice. Fed. R. Civ. P. 65(b)(1) provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A)     specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)     the movant's attorney, certifies in writing any efforts made to give notice and the reasons why it should not be required.

Plaintiff has provided neither an affidavit nor verified complaint. Nevertheless, even assuming the motion was properly supported with an affidavit or a verified complaint, Plaintiff has failed to provide anything to indicate that in the absence of injunctive relief, he faces irreparable harm. Consequently, Plaintiff is not entitled to the requested relief.

The Court must consider four elements in determining whether to grant a request for preliminary relief. The Court must consider the following: "1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; 2) whether the movant has shown that irreparable injury will occur absent the injunction; 3) whether the preliminary injunction would harm third parties; and 4) whether the public interest would be served by issuing the preliminary injunction." *Sandison v. Michigan High School Athletic Association Inc.,* 64 F.3d 1026, 1030 (6th Cir. 1995); *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994). The movant must, at a minimum, show some likelihood of success on the merits.

Plaintiff has not shown some likelihood of success on the merits as he has merely alleged a difference in opinion with his treating physician. As previously stated, a difference of opinion between a prisoner patient and prison physician regarding treatment does not give rise to a § 1983 claim. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreement between an inmate and a physician over the inmates proper medical care do not state a § 1983 claim unless exceptional circumstance are alleged"). Here, Plaintiff has not alleged any exceptional circumstances. Indeed, Plaintiff claims

40

he has had this illness for twenty years and he does not indicate he has ever received treatment or medical advice that treatment was needed. The appropriate course of medical treatment is a classic example of a matter for medical judgment. Exercising their professional judgment, Hamilton County Jail's medical personnel made the decision to run at least three tests and based on those results, not to order treatment at that time. Although Plaintiff disagrees with that decision, his disagreement is not actionable under § 1983. Therefore, Plaintiff is unable to show some likelihood of success on the merits and this element does not weigh in his favor.

Furthermore, Plaintiff has neither alleged he will suffer irreparable harm or provided any information from which the Court can even infer he will suffer irreparable harm absent the Court's intervention. Plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991). Thus, Plaintiff does not allege he will suffer irreparable harm or identify any irreparable injury that would justify the imposition of the requested injunctive relief. Consequently, the irreparable harm element does not weigh in Plaintiff's favor.

In addition, granting the requested relief of ordering Hamilton County to send Plaintiff to a specialist could cause a substantial burden to others, as it would unduly subject the prison officials and medical personnel to premature judicial oversight and expense. Furthermore, it does not appear any public interest would be advanced by issuing the injunctive relief in this case as Plaintiff has not demonstrated treatment is necessary at this time. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994); *also*

*see Williams v. Carlton*, 98 F.3d 1343 (6th Cir. Oct. 7, 1996), *available in* 1996 WL 577635, at *1. Consequently, this element does not weigh in Plaintiff's favor, and Plaintiff has failed to satisfy his burden as to any factors to favor granting injunctive relief.

Accordingly, Plaintiff's motion for a preliminary injunction will be **DENIED** for the reasons set forth above (Court Doc. 22).

## VII.    CONCLUSION

Pursuant to Federal Rule of Civil Procedure 21, misjoined Defendants Officer Wilhoit, Erlanger Health Systems, Dr. Barker, and Dr. Papillion will be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to file separate complaint (Court Doc. 2). As to the remaining defendants, Plaintiff has failed to state a claim that would entitle him to relief under 42 U.S.C. § 1983. Accordingly, Plaintiff's complaint will be **DISMISSED** *sua sponte* in its entirety for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983. 28 U.S.C. § 1915(e)(2)(B)(i)(ii) (Court Doc. 2). In addition, all of Plaintiff's various motions are **DENIED** (Court Docs. 3, 5, 7, 7-1, 8, 9, 13, 15, 16, 17, 18, 19, & 22).

An appropriate judgment will enter.

.                                                          ____*/s/ Harry S. Mattice, Jr.*____
                                                                    HARRY S. MATTICE, JR.
                                                                    UNITED STATES DISTRICT JUDGE